Steinke vs. Diamond Match Co.

STEINKE, Respondent, vs. DIAMOND MATCH COMPANY, Appellant.

*March 22 — April 10, 1894.*

*Master and servant: Defective appliances: Injury to servant not in the line of his employment: Negligence of fellow-servant: Special verdict: Instructions to jury: Appeal.*

1. In an action for personal injuries sustained by a boy employed in a match factory through the fall of a freight elevator alleged to have been in a defective and unsafe condition, it is *held*, upon the evidence, to have been error not to include in the questions submitted for a special verdict the questions whether plaintiff was injured

Steinke vs. Diamond Match Co.

while acting in the line of his employment, and whether he was injured by reason of any negligence of any co-employee or servant of the defendant.

2. The trial court should have sustained an objection to the question, "Was a co-employee of the plaintiff guilty of negligence which with the negligence of the defendant contributed to the injury?" and should have substituted therefor the second of the questions above mentioned.

3. The question above quoted having been submitted, it was error to refuse to instruct the jury that if the elevator was provided with proper appliances and was made of suitable material, and the injury was caused by its being improperly handled by a co-employee, and would not have happened without some improper or careless act of such co-employee, then in answering said question they should state that the injury was caused by the negligence of the co-employee alone.

4. The question, "If the jury find that the defendant had defective appliances and incompetent men to operate the same, did the plaintiff assume the risk thereof?" is criticised as obscure, and it is *held* to have been error to refuse, in connection therewith, to instruct the jury that if plaintiff was not employed or directed by defendant or the foreman to work at or upon the elevator, and he was out of the line of his employment, and for the purpose of his employment it was unnecessary for him to be at or upon the elevator at the time of the injury, they should answer said question in the affirmative.

5. Where there is no general verdict and, through the insufficiency of the special verdict, the jury has failed to find on material questions, this court will not pass upon such questions on appeal.

APPEAL from the Circuit Court for *Winnebago* County. The facts are stated in the opinion. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there was a brief by *Finch & Barber*, and oral argument by *F. Beglinger*.

For the respondent there was a brief by *Bouck & Hilton*, and oral argument by *G. B. Hilton*.

ORTON, C. J. This action is brought by the plaintiff, an infant, by his guardian *ad litem*, to recover of the defendant company damages for personal injury received while

employed in its match factory, by the use of unsafe, dangerous, and defective machinery and appliances, negligently furnished by the company. According to the testimony, the facts appear to have been substantially as follows:

The defendant company operated a large match factory at the city of Oshkosh, and employed a large number of operatives. One of the principal buildings was two stories in height, and the upper story was used by the several machines employed in various departments of the works, and each machine was managed by one person, and the machines were set near together, within two or three feet of each other, and were run by steam machinery in another building. There was a stairway from the lower to the upper story, and in one corner of the upper room was an elevator, run also by steam, and used exclusively for elevating the heavy materials used in the business from the lower to the upper story, and for carrying down the manufactured products and waste material. The elevator was made like others for similar use, but evidently not of the best construction, and it often and easily became out of order, without the most careful handling and use. It was run by ropes attached to the cage and passing over two drums or pulleys, and the slack caused by the elevator going up or down, and run off from one drum, was taken up by the other. It was started up or down by levers worked by the hand, and notches or catches in the elevator rod running up and down the shaft stopped it even with the upper floor. This may not be a scientific description, but is near enough for our present purpose.

The plaintiff operated a machine for making boxes for matches, which stood about thirty feet from the elevator. He was about fourteen years of age, and had worked in the establishment two years. On the 26th day of May, 1891, his machine was somewhat out of order, and the machinist was engaged in trying to fix it, and the plaintiff kept it

running as much as he could, and was standing near it, when, about 4 o'clock in the afternoon, some one — the plaintiff thinks it was a man by the name of Reiss, who worked a machine near his own — called out, " Charley, the elevator is humbug," and that being the name he was called by usually, he left his machine and ran towards the elevator, and, seeing a large bundle of waste, which would weigh about 150 or 200 pounds, in the elevator ready to go down, he thought *that* was what he was called for. He went to the elevator and at once stepped in on the floor of the elevator, and instantly it fell to the lower floor, and his leg was broken and he was otherwise injured.

There was a man by the name of Charles Glendenning, who was the machinist fixing plaintiff's machine at the time, and he was also usually called " Charley," and he supposed that he was the one called, and he ran towards the elevator and arrived there first, according to his own testimony, and was trying to fix the elevator, whose ropes were off the drum, and were hanging down around the package of waste on the elevator, when the plaintiff came up and stepped in on the floor and went down. A man by the name of Wentworth had been at work on the upper floor that afternoon, taking packages of waste from the press, and loading them upon the elevator, and sending them down to another man, who stood below ready to receive them. He had sent down one package just before he put the package that went down with the plaintiff on the elevator, but somehow the elevator had become out of order and he could not start it down, and he was trying to arrange the ropes when the plaintiff came. What caused the elevator to fall none of the witnesses seemed to know. When the plaintiff and Glendenning came to the elevator it stood several inches above the floor of the room. This would seem to indicate that the elevator rod had passed by the catch or slot which held it even with the floor when

in order.    It was not usual for any person to go down with
freight on the elevator.    If there was but one person en-
gaged in sending down freight he generally started it
down, and then went down by the stairway.    It was not
any part of the plaintiff's general business and employment
to send down waste by the elevator.    He had sometimes
sent up sand by it, to be used in his business.    His sole em-
ployment was at his machine, making match boxes.

This elevator had been used to carry up or down all the
freight of the concern for a long time, and was used again
that afternoon, and seemed to be sufficient for the purpose;
and yet it had a strange faculty of getting out of order, at
least temporarily.    It must have been very loose-jointed,
and the ropes had a tendency to get loose on, and get off,
the pulleys.    It was a question whether this elevator ma-
chinery was defective and in want of repair, or was put
out of repair by careless handling at this time.    It is strange
that the elevator stood firm while loaded by the bale of
waste weighing 200 pounds, and then fell suddenly by this
boy plaintiff stepping on it.    Any person acquainted with
this elevator could have seen that there was something
wrong about it by the ropes being off the pulley and hang-
ing down loosely over the floor and on the bale of waste,
before getting very near to it.

This is a fair statement of the case.    The jury found a
special verdict as follows: (1) The defendant was guilty
of want of ordinary care and prudence, which caused the
injury of the plaintiff.    (2) The plaintiff was not guilty of
the want of ordinary care and prudence that contributed
to the injury.    (3) A co-employee of the plaintiff was not
guilty of negligence which, with the negligence of the de-
fendant, contributed to the injury.    (4) If the jury find
that the defendant had defective appliances, and at the
time of the injury incompetent men to operate the same,

then the plaintiff did not assume the risk thereof. (5) The damages are assessed at $600.

The evidence presented several special issues to the jury: (1) Had the plaintiff reason to think that he was the one called by the name of "Charley," and that he was called to take the bale of waste on the elevator to the lower floor? (2) Was the defective condition of the elevator, generally, the proximate cause of the plaintiff's injury? or (3) Was the elevator at the time put out of order and in a dangerous and defective condition by the negligence of Wentworth, a co-employee of the plaintiff? (4) Had the plaintiff notice, before he stepped upon the floor of the elevator, that it was out of order, or that Charley Glendenning was trying to put it in proper condition for use? (5) Had his co-employee Reiss authority to call the plaintiff away from his usual work and order him to take the bale of waste down to the lower floor on the elevator, or had the plaintiff reason to think he had such authority? (6) Was taking freight down on the elevator within his line of employment?

I do not say that these questions should have been submitted to the jury for a special verdict, but they ought to be embraced in the issues submitted. The first and second questions, as to the negligence of the defendant and the contributory negligence of the plaintiff are very general and embrace many facts. The third question submits the negligence of a co-employee only in connection with that of the defendant, and the independent question whether the negligence of a co-employee was the proximate cause of the injury was not submitted to the jury. The fourth question is obscure, if not unintelligible: "If the jury find the defendant had defective appliances and incompetent men to operate the same, did the plaintiff assume the risk thereof?" But the jury was not asked to find any such thing, and have not so found, and therefore the jury had no right to find that the plaintiff did not assume the risk thereof.

The counsel for the defendant requested the court to submit to the jury the following questions, among others, in the special verdict: (1) "Was the plaintiff injured while acting in the line of his employment?" (2) "Was the plaintiff injured by reason of any negligence or carelessness of any co-employee or servant of the defendant?" The counsel for the defendant also requested the court to give the following instructions to the jury: "If you find that the elevator was provided with proper appliances and was made of suitable material, and that the injury was caused by the elevator being improperly handled by Wentworth, and that even though the lever was out of place the injury would not have occurred without some improper or careless act on Wentworth's part, then in answering the third question you will state that the injury was caused by the negligence of the co-employee alone. If you find that the plaintiff was at the time of the injury not employed or directed by the defendant or foreman of the box room to work at or upon the elevator, and that he was at that time out of the line of his employment, and that for the purpose of plaintiff's employment it was unnecessary for him to be at or upon the elevator at the time of the injury, then you must answer the fourth question, ' Yes.' " The defendant's counsel objected to the submission of the third question of the special verdict, on the ground that it was ambiguous and misleading.

The questions submitted were too brief and general to call the attention of the jury to many of the most important and essential ingredients of the plaintiff's right to recover in such a case. It is a very peculiar case, and somewhat complicated, and the jury should have been made to thoroughly understand it and the law governing such a case in all of its peculiar and essential features. The answers do not dispose of all of the merits of the case, or show the right of the plaintiff to recover.

1. We are therefore of the opinion that the court should

have submitted the above two questions, proposed by the defendant's counsel, and that the court erred in not doing so. They would have supplied an obvious deficiency in the special verdict.

2. We are of the opinion that the court ought to have given the two instructions asked, as having a direct bearing upon the questions proposed. If the plaintiff's injury was caused by the negligence of a co-employee *alone*, he ought not to recover. Or, if the plaintiff received his injury in doing that which he was not employed or directed to do by the company or by the foreman of the department in which he was to do his work, or while out of the line of his employment, he ought not to recover. The court gave no instructions covering the ground of these two proposed instructions, and we think it was error to have refused to so instruct the jury.

3. We think the court should have sustained the defendant's objection to the third question of the special verdict. The jury was asked to find whether the negligence of a co-employee and that of the defendant concurred to contribute to the injury. Such a question would be difficult for even a lawyer to answer. Or, if the question was divided and both answered in the affirmative, the legal conclusion would present a very difficult problem. The second question proposed by the defendant should have been substituted for the third question submitted; then the jury might intelligently answer whether the injury was caused by the negligence of a co-employee or not.

This court is asked to order a new trial on the *merits* of the case, as the circuit court ought to have done on the motion of the defendant. The jury failed to find on many of the material questions in the case, by reason of the insufficiency of the special verdict. It will be timely to reverse the judgment on the merits of the case after the jury have considered and found a verdict upon all the merits of the case. If we should be of the opinion that the plaintiff

ought not to have recovered because he was out of the line of his employment when he was injured, or because he was injured by the negligence of Wentworth, a co-employee, or because he had full notice of the dangerous condition and defects of the elevator before he entered it, or because he had no reason to think that he was called to go down with the freight on the elevator, it might be justly said that we had passed on questions the jury had not considered or had an opportunity to pass upon. If there had been a general verdict in connection with this limited and defective special verdict, then the whole case would have been before us on the merits. All this court can do in the case is to reverse the judgment for the above errors, and direct a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.